**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

GEORGE H. BRISBANE                    *

Plaintiff                                        *

v                                                   *            Civil Action No. RDB-12-1557

HARLEY LAPPIN, et al.                 *

Defendants                                   *
                                              ***

## MEMORANDUM OPINION

Self-represented plaintiff George H. Brisbane ("Brisbane") filed the above-captioned *Bivens*[1] Complaint in the United States District Court for the District of Columbia. The case was transferred to this Court on May 25, 2012. ECF No. 20 and 21. Defendants by their attorneys move to dismiss or, in the alternative for summary judgment (ECF No. 25), and Brisbane has failed to oppose the motion. After review of the pleadings, exhibits, and applicable law, the Court determines that a hearing is unwarranted. Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendants' motion, construed as a motion for summary judgment (ECF No. 25), will be GRANTED and judgment will be ENTERED in favor of Defendants.

**Background**

Brisbane, a federal prisoner confined at the Federal Correctional Institution at Cumberland, Maryland (FCI Cumberland), claims Defendants violated his First Amendment rights and the Administrative Procedure Act (APA)[2] by eliminating law books from the prison and replacing them with an Electronic Law Library (ELL). ECF No. 1. Specifically he claims elimination of the law books from the main law library will hinder adequate, effective, and

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] *See* 5 U.S.C. §§702 – 706.

meaningful access to the courts for both himself and other prisoners similarly situated.   He claims the ELL does not provide access to all of the legal research resources which were provided with the books and periodicals in the library.   *Id*. at p. 4.

Brisbane explains he is currently seeking collateral relief from his conviction in the United States Court of Appeals for the District of Columbia.   He states that the Bureau of Prisons (BOP) has promulgated regulations designed to afford prisoners reasonable access to legal materials and reasonable opportunities to prepare legal documents.   ECF No. 1 at p. 3, citing 28 CFR §543.10.   Brisbane claims the regulations create rights and duties regarding the adequacy of BOP law libraries which "exceed what is required by the Constitution."   *Id*.

Brisbane alleges there are more than 4,000 law books available in the main law library at FCI Cumberland which have, to date, "generally afforded interested inmates an adequate opportunity to meaningfully research pertinent issues preparatory to filing complaints, motions, petitions, pleas and appeals for judicial relief."   ECF No. 1 at p. 4.   Prisoners at FCI Cumberland are not provided access to persons trained in law and the staff working in the law library do not have the legal training necessary to assist with research.   *Id*.

According to Brisbane, the ELL system does not afford access to all the material that had been available in the main law library of FCI Cumberland.   He claims that inmates conducting research on the ELL system are limited to a maximum of two hours before the database times out for fifteen minutes.   Brisbane states that research may be printed from the ELL system at a rate of 15 cents per page, which few inmates can afford.   ECF No. 1 at pp. 4 – 5.

When the ELL system was activated, an announcement was made that print materials would be accessible but would no longer be updated in print.   Brisbane states that Defendant Lappin then authorized the elimination of all law books from BOP law libraries where ELL

systems were operational, but gave discretion to the wardens of each prison to do so.   At FCI-Cumberland, Defendant Eichenlaub directed Defendant Caraway to remove all law books from the law library except for the most recent edition of Black's Law Dictionary.    Brisbane states that notice was given in mid-August 2010 that all law books in the library, the content of which was accessible on the ELL, would be eliminated in thirty days.  ECF No. 1 at p. 5.

Brisbane claims he made "written and in-person appeals to Defendant Caraway, and other staff, to allow the law books to remain in the library."  *Id*.  Brisbane alleges other inmates also complained and all claimed they needed the books in order to "vindicate their right of access to the courts."  *Id*.  Brisbane attaches a copy of a BOP Inmate Request to staff regarding the law library, but does not claim the request was submitted by him.  *Id*. at Ex. 2 and 3.    Brisbane claims Caraway did not respond to the "unnamed plaintiff's" request as required by BOP regulations.  ECF No. 1 at p. 6.

On May 19, 2011, a bulletin signed by Caraway was posted on a notice board announcing that all print law library material would be removed from the institution within 30 days; the space created by removal of the books would be utilized for a Job Re-Entry Resource Center; and the legal research and reference material available on the ELL system was deemed sufficient for prisoners to challenge their sentences or the conditions of confinement.  ECF No. 1 at Ex. 4. Brisbane alleges that, as currently configured, "the ELL system will not and cannot satisfy BOP's obligations under the law to provide the facility's inmate population with reasonably adequate access to materials necessary to research relevant law for purposes of preparing and filing motions, petitions, pleas and appeals for judicial relief."  ECF No. 1 at p. 6.

 Brisbane explains that only 10 computer terminals are provided for more than 1300 inmates, which he maintains is not the practical equivalent of access to 4000 law books.  In

addition, he states the ELL has crashed or malfunctioned since its activation, resulting in no access to research data for "hours and sometimes days."  He adds the system is "particularly vulnerable to vandalism" which may result in extended periods of no service.  Brisbane claims that such interruptions in service are likely to interfere with his ability, as well as others, to comply with strict time limits with respect to appeals and post-conviction remedies.  ECF No. 1 at p. 7.

Brisbane further argues that most inmates are not well-educated and are unfamiliar with computer research skills.  He predicts that if forced to rely exclusively on the ELL system, prisoners at FCI Cumberland "will have actions for judicial relief dismissed as untimely and/or denied for failure to adequately plead or support their claims because the ELL system cannot adequately meet the research needs of [the] inmate population."  Brisbane claims the elimination of a separate law library also creates a problem because the terminals are located in the leisure library where loud conversation, music and laughter occur. In addition, the materials on the ELL system do not include American Jurisprudence or Maryland Reporters, which Brisbane claims are required by BOP regulations.  ECF No. 1 at pp. 7 – 8.

Brisbane further states that Defendants did not take steps to amend BOP regulations regarding inmate access to legal materials in accordance with the APA.  He claims forced exclusive reliance on the ELL "would infringe" on the rights of inmates to adequate, effective, and meaningful access to courts.  Brisbane states, without explaining, that Caraway's "action and failure to act . . .  effectively prevented the exhaustion of administrative remedies concerning the law book issue for purposes of 42 U.S.C. §1997(e).  ECF No. 1 at p. 9.  As relief Brisbane seeks a declaratory judgment stating the ELL system is constitutionally inadequate and elimination of the law book collection will violate inmates' rights.  Additionally, Brisbane seeks an injunction

requiring Defendants to continue to make the existing law book collection available to FCI Cumberland inmates unless the ELL is improved and expanded. *Id.*

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (U.S. 2009); *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere

speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## Analysis

### Exhaustion of Administrative Remedies

The PLRA provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

As a prisoner, Plaintiff is subject to the strict requirements of the exhaustion provisions. It is of no consequence that Plaintiff is aggrieved by a single occurrence, as opposed to a general conditions of confinement claim.  *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct).  Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001).  A claim which has not been exhausted may not be considered by this Court.  *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir.2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir.2007); *Kaba v.*

> *Stepp*, 458 F.3d 678, 684 (7th Cir.2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir.2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

Thus, Plaintiff's claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D.Md.2003).   The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D.Md.1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir.2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

The BOP has established an Administrative Remedy Program for inmates to resolve concerns related to their confinement.  *See* 28 C.F.R. § 542.10 *et seq*.  Inmates must first attempt

informal resolution with staff. *See* 28 C.F.R. § 542.13. If an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within twenty calendar days of the date of the occurrence on which the complaint is based. *See* 28 C.F.R. §542.14(a). If an inmate is not satisfied with the Warden's response to the formal complaint, he may appeal, using the appropriate BP-10 form, to the Regional Director within twenty calendar days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate is still dissatisfied, he may appeal the Regional Director's response to the Office of the General Counsel, located in the BOP Central Office in Washington, D.C., using the form BP-11. The inmate must file this final appeal within thirty calendar days of the date the Regional Director signed the response. *See Id*. If, at some level, the inmate does not receive a response within the time allotted for reply, the inmate may consider the absence of a response to be a denial at that level. *See* 28 C.F.R. §542.18. An inmate is not deemed to have exhausted his administrative remedies until he has pursued his grievance through all levels. *See* 28 C.F.R. § 542.15(a).

Brisbane admits that he did not exhaust administrative remedies and claims he was prevented from doing so because complaints filed by "unnamed" prisoners went unanswered. ECF No. 1 at p. 6. The allegation is inadequate to establish the unavailability of the administrative remedy procedure as it pertains to Brisbane. There is no evidence that he was denied access to the forms required or that he was in any way prevented from fulfilling any of the steps required for administrative exhaustion. To the extent Brisbane appears to rely on the efforts of other "class members" in this case, such reliance is misplaced. There has been no certification of a class action in this case and Brisbane is not qualified to advance the claims of

others.   Thus, Brisbane has not exhausted administrative remedies depriving him of judicial review of his claims.[3]

A separate Order granting summary judgment follows.


September 25, 2012      _____/s/_____
Date                                    RICHARD D. BENNETT
                                        UNITED STATES DISTRICT JUDGE

---

[3] The Court additionally observes that the Complaint does not state a claim upon which relief may be granted, inasmuch as Brisbane has not alleged actual harm resulting from the elimination of printed law books from the prison library.  "The requirement that an inmate alleging a violation of *Bounds* [*v. Smith*, 430 U. S. 817, 821 (1977)] must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Brisbane's Complaint predicts future harm resulting from the change in legal materials which is insufficient to state a claim of denial of access to courts.